# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

**RODNEY KILGORE**, as sole proprietor of
Monteagle Wrecker Service; and
**WILLIAM KILGORE**, as sole proprietor of
Sonny's Wrecker Service,

        *Plaintiffs,*

**v.**

**DANIEL RUSKEY**, in his individual
capacity as Lieutenant with the Tennessee
Department of Safety;
**JEFF MOSELY**, in his individual capacity
as Captain with the Tennessee Department of
Safety; and
**JAMES HUTCHESON**, in his individual
capacity as Field Operations Lieutenant
Colonel with the Tennessee Department of
Safety,

        *Defendants,*

Case No. _____

**JURY DEMAND**

---

## VERIFIED COMPLAINT

    **COMES NOW** Plaintiffs, Rodney Kilgore, d/b/a Monteagle Wrecker Service of

Chattanooga, Monteagle Wrecker Service of Kimball, and formerly Monteagle Wrecker Service

of Grundy County, Tennessee, and William Kilgore, d/b/a Sonny's Wrecker Service, by and

through counsel, and sue Defendants, Daniel Ruskey, in his individual capacity as a Lieutenant

with the Tennessee Department of Safety; Jeff Moseley, in his individual capacity as Captain

with the Tennessee Department of Safety; and James Hutcheson, in his individual capacity as

Field Operations Lieutenant Colonel with the Tennessee Department of Safety (hereinafter

"THP"), for five million dollars ($5,000,000.00) in compensatory damages, and ten million

1

dollars ($10,000,000.00) in punitive damages, for Due Process violations, violation of Plaintiffs' Right to Equal Protection under the law, violations of Plaintiffs' First and Fourteenth Amendment Rights, pursuant to 42 U.S.C. § 1983, conspiracy to violate said rights, in contravention of 42 U.S.C. § 1985, violation of Plaintiffs' rights of freedom to contract, freedom of association, and tortious interference with business and contractual relations, as well as for attorney's fees and costs, pursuant to 42 U.S.C. § 1988, and for their causes of action, claim and allege as follows:

## I. **INTRODUCTION**

1.      The Tennessee Department of Safety (hereinafter, "TDOS") was established in 1939 by the Tennessee General Assembly to exercise authority over the Tennessee Highway Patrol (hereinafter, "THP").

2.      In 1996, the Office of Commercial Vehicle Enforcement and the Public Service Commission function and staff related to commercial vehicle regulation was incorporated into the TDOS.

3.      On April 3, 2003, Governor Phil Bredesen executed Executive Order #8, constituting the Office of Homeland Security.

4.      In 2007, the Office of Homeland Security was merged with TDOS, and is now known as the Tennessee Department of Safety and Homeland Security, of which the THP is a part.

5.      In furtherance of its stated focus on highway safety and ensuring the general welfare of motorists and passengers, the Tennessee Department of Safety and Homeland Security recognized the importance of efficiently, effectively, and expediently clearing the roadways following incidents thereon, and the important role that privately owned and operated

2

towing and wrecker service companies play in said focus, authorized and implemented a program for privately owned and operated towing and wrecker companies to be utilized by the THP when clearing accidents and hazards off of Tennessee roadways.

6. Said program allows privately owned and operated towing and wrecker companies that meet or exceed certain criteria and minimum established standards inclusion onto a list of like companies to be utilized on a rotational basis by the THP.

7. The Tennessee Department of Safety and Homeland Security delegated to the THP the administration and supervision of the rotating list of privately-owned towing and wrecker companies to be utilized while clearing the State's roadways.

8. This list affords privately owned and operated towing and wrecker companies access to the substantial portion of their respective Market base controlled and governed by the Tennessee Department of Safety, i.e., wreckage and accidents occurring on Tennessee highways.

9. In order to be listed and remain on said rotating list, towing and wrecker companies are subject to routine inspection, must maintain heightened quality standards, and often incur substantial expenses as a result.

10. The rotating list of towing and wrecker companies is governed by the provisions of the Tennessee Department of Safety's Towing Services Standards Manual.

## II. PARTIES

11. Plaintiff, Rodney Kilgore, is the sole proprietor of Monteagle Wrecker Service of Chattanooga, Monteagle Wrecker Service of Kimball, and formerly the sole proprietor of Monteagle Wrecker Service of Grundy County, Tennessee.

12. Plaintiff, William Kilgore, is the sole proprietor of Sonny's Wrecker Service doing business in Tennessee. Plaintiff William Kilgore is Plaintiff Rodney Kilgore's father.

3

13.     Defendant, Daniel Ruskey, is a Lieutenant employed by the Tennessee Department of Safety. He is sued in his individual capacity. Plaintiffs allege that Defendant Ruskey acted under color of state law in violating Plaintiffs' Rights as guaranteed by The United States Constitution.

14.     Defendant, Jeff Moseley, is a Captain employed by the Tennessee Department of Safety. He is sued in his individual capacity. Plaintiffs aver that Defendant Mosely acted under color of state law in violating Plaintiffs' Rights guaranteed by The United States Constitution.

15.     Defendant, James Hutcheson, is a Field Operations Lieutenant Colonel employed by the Tennessee Department of Safety. He is sued in his individual capacity. Plaintiffs avers that Defendant Hutcheson acted under color of state law in violating, and/or in acquiescing to the violation, of Plaintiffs' Rights as guaranteed by the United States Constitution.

### III. VENUE

16.     This Court has jurisdiction to hear this pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. Venue is predicated upon 28 U.S.C. § 1391.

### IV. FACTUAL BACKGROUND

17.     As detailed hereinafter, this cause of action seeks to redress the efforts of Defendants, and others not yet capable of being identified by Plaintiffs, to financially ruin Plaintiffs through an ongoing pattern of harassment, arbitrary and capricious conduct, and retaliation in deprivation of Plaintiffs' federal constitutional rights, in addition to violations of State law.

18.     Plaintiffs, other family members, and friends, have owned and operated towing service businesses, motor vehicle mechanical service businesses, and other like business endeavors, in Southeast Tennessee and in the State of Georgia for over fifteen (15) years.

4

Plaintiff Rodney Kilgore is the owner of Monteagle Wrecker Service, a sole proprietorship which has operated in several locations, including but not limited to, two (2) locations in Monteagle, Tennessee, one (1) in Chattanooga, Tennessee, one (1) in Kimball, Tennessee, and one (1) previously located in Monteagle, Grundy County, Tennessee. These locations have been recognized and treated separately by the Tennessee Department of Safety, its employees, and agents for purposes of regulation and/or the THP Rotating Schedule Towing List.

19.     The removal of Monteagle Wrecker Services' location at 801 Dixie Lee Avenue in Monteagle, Tennessee, was the subject of a previous action, filed on January 6, 2016, by Plaintiffs Christina Adair, Rodney Kilgore, and William Kilgore in the United States District Court for the Eastern District of Tennessee at Chattanooga, Case No. 1:16-cv-00003, alleging sexual harassment of one of Plaintiff Rodney Kilgore's office staff by an officer of the THP, in addition to violations of Plaintiffs' First and Fourteenth Amendment Rights resultant of subsequent complaints lodged by Plaintiffs concerning the aforementioned sexual harassment, which was dismissed on June 18, 2018. This dismissal was upheld by the Sixth Circuit. This case was filed subsequent to the voluntary dismissal of Plaintiffs' prior action, Case No. 1:14-cv-51 on January 8, 2015.

20.     Additionally, Plaintiffs filed a second action in the United States District Court for the Eastern District of Tennessee at Chattanooga, Case No. 1:16-cv-00340, alleging further and additional violations of Plaintiffs' protected rights. This action was subsequently dismissed on June 28, 2018, and was not appealed.

21.     Plaintiffs aver that the operation of a wrecker company requires the purchase and/or rental of specialized equipment, much of which is extremely expensive, and includes equipment such as Class C wrecker trucks and rotators, equipment necessary for the removal of

5

wrecked 18-wheeler semi-trucks from Tennessee highways in order to clear these highways for public as well as commercial traffic. Plaintiffs aver that a rotator costs several hundred thousand dollars.

22.    As a result, inclusion on the THP Rotating Schedule Towing List is crucial to the economic survival of these companies who have invested in this specialized equipment, enabling them to have a sufficient volume of business so as to enable them to continue making the payments for said equipment, benefitting both the wrecker industry itself, as well as the State as a whole.

23.    The Tennessee Department of Safety is well aware of this necessary balance, and the THP Rotating Schedule Towing List was initially intended to ensure that each wrecker company receives their fair share of business. For purposes of example, the cost of the removal and cleanup of a rolled over and burned commercial carrier truck can run into multiple thousands of dollars, requiring many man hours and the use of specialized equipment.

24.    Defendant Ruskey was a defendant in No. 16-cv-0340. He was also in charge of an in depth THP investigation of the Plaintiffs and their business dealings which was undertaken in response to Plaintiffs initial legal action in No. 1:16-cv-00003.

25.    Plaintiffs aver that once sued as a defendant, Defendant Ruskey pursued a personal vendetta encouraged and acquiesced to by his superiors named herein, as well as others unnamed.

26.    Plaintiffs Rodney Kilgore and William Kilgore aver that the subsequent scrutiny of Plaintiffs, the individually owned and operated wrecker service of Cassie Kilgore, the daughter and granddaughter of Plaintiff Rodney Kilgore and Plaintiff William Kilgore, respectively, as well as the business dealings of another individually owned and operated

6

wrecker service, owned by Plaintiffs' friend, Fred Messick, reached the investigatory level of the absurd.

27.     Unlike investigations into other wrecker companies within the district in which they operated their individual wrecker companies, the scope of Defendant Ruskey's investigation became unnecessarily granular.

SUSPECT TIMELINE OF EVENTS

28.     On June 18, 2018, Plaintiffs' action No. 1:16-00003, in which Defendant Ruskey was named a defendant, was dismissed.

29.     On June 28, 2018, Plaintiffs' action No. 1:16-cv-00340, in which Defendant Ruskey was named a defendant, was dismissed.

30.     On July 31, 2018, Plaintiffs were served by officers of THP at their respective individual business locations with a document captioned "Before the Commissioner of the Tennessee Department of Transportation, In the Matter of State of Tennessee Department of Safety versus Monteagle Wrecker Service, Rodney Kilgore, Monteagle Truck Center, Fred Messick, Rocky Top Wrecker Service, Cassie Kilgore, and Sonny's Wrecker Service, William Kilgore, in Case No. 2-001-18"[1] and entitled, "DETERMINATION."

DETERMINATION: A FOREGONE CONCLUSION

31.     This "determination" consists of a litany of every wrong-doing/violation attributed to the Plaintiffs Kilgore, as well as alleged violations and/or accusations against Cassie Kilgore, Fred Messick, and their respective businesses.

---

[1] A complete copy of the document received by each Plaintiff is attached hereto and incorporated by reference, as Exhibit 1.

7

32.     Prior to the receipt of this "determination," neither Cassie Kilgore nor Mr. Messick had been given warnings concerning issues in need of their attention by the THP, nor had they ever been temporarily suspended from the THP Rotating Schedule Towing List.

33.     Plaintiffs aver the general thrust of this determination was that these businesses were all in collaboration with one another. Plaintiffs aver that to the best of their understanding and belief, there is no rule set forth in the Tennessee Department of Safety's Towing Services Standards Manual (hereinafter "THP Towing Manual") prohibiting "collaboration." In fact, prior to the appearance of Defendant Ruskey in this rotation district, collaboration amongst wrecker companies had been encouraged by the THP.

## CONTRACTUAL RELATIONSHIP BETWEEN PLAINTIFFS AND THE TENNESSEE DEPARTMENT OF SAFETY

34.     The administration and regulation of the THP Rotating Schedule Towing List is governed by the THP Towing manual, which is provided to each towing company, and delineates the various requirements to which each towing company must adhere in order to be included and remain on the THP Rotating Schedule Towing List.

35.     Inclusion on the THP Rotating Schedule Towing List is governed by rules and regulations set forth in the THP Towing Manual, which is supposed to be adopted by the State and provided to each towing company, in accordance to the provisions of the Tennessee Uniform Administrative Procedures Act.

36.     Pursuant to the rules and regulations found in the THP Towing Manual, towing and wrecker service companies included thereon are subject to routine and regular inspections to ensure compliance with said rules and regulations.

8

37. If the towing or wrecker service company is found to be in compliance with all of the rules and regulations of the THP Towing Manual, said towing or wrecker service company *must* remain on the THP Rotating Schedule Towing List.

38. Plaintiffs aver the aforementioned requirements of the THP Towing Manual results in substantial expenditures on the part of the towing companies.

39. In consideration for adherence to the requirements and regulations set out in the THP Towing Manual, towing companies are included on the list of companies to be utilized by the THP on a rotating basis, affording them access to the substantial portion of the Market controlled and governed by the THP.

40. THP officers responding to the scene of an accident requiring the assistance of a towing company do not have discretion as to which company from the THP Rotating Schedule Towing List is called. Instead, the officer alerts Dispatch, which then contacts the towing company that is next on the list.[2]

41. Moreover, prior to being removed from the THP Rotating Schedule Towing List, be it temporarily or permanently, towing companies are entitled to a hearing at which they are to be presented the evidence against them, and are to be given an opportunity to present their own countervailing evidence.[3]

### THE SPECTRE OF DUE PROCESS

42. A hearing was scheduled for August 21, 2018, the subject matter of which was the "DETERMINATION," dated July 31, 2018.

---

[2] *See* the 2017 Revision to the Tennessee Department of Safety & Homeland Security Towing Services Manual, at Section XII(A).
[3] *See* the 2017 Revision to the Tennessee Department of Safety & Homeland Security Towing Services Manual, at Section XVII.

9

43.     The hearing was conducted at THP headquarters, located at 4120 Cummings Highway, Chattanooga, Tennessee, and subsequently continued to the 27th day of August 2018, at that same location.[4]

44.     At the aforementioned hearing on August 21, 2018, Defendant Ruskey served in a prosecutorial role, acting as the "representative" for the THP.

45.     At the aforementioned hearing on August 21, 2018, Defendant Mosley served as the trier of fact.

46.     Defendant Ruskey introduced an accounting firm's "forensic" accounting, which was produced for the Tennessee Attorney General's Office in an effort to create a defense in No. 1:16-cv-00003 and No. 1:16-cv-00340, and presented such as evidence of collaboration among these four (4) independently owned companies.[5]

47.     Upon information and belief, Plaintiffs aver that there are other towing companies under the supervision of the Defendants that were actually guilty of the specific infractions Plaintiffs were alleged to have committed, yet, unlike Plaintiffs, were afforded an opportunity to correct said violations, and allowed to remain on the THP Rotating Schedule Towing List.

48.     Plaintiffs aver that this "forensic" accounting, which Plaintiffs have been advised cost the State of Tennessee in excess of sixty thousand dollars ($60,000.00), is patently deficient, lacking substantive proof of any wrongdoing by either of the Plaintiffs Kilgore.

49.     Again, Plaintiffs underscore the importance of the fact the THP Towing Manual does not prohibit collaboration per se, and that such is, and has been, standard practice within the industry for wrecker and towing companies to employ other wrecker and towing companies

---

[4] Transcripts of hearing on August 21st and 27th, 2018 are attached and incorporated herein as Collective Exhibit 2.
[5] A complete copy of this "forensic" accounting is attached and incorporated herein as Exhibit 3.

10

when necessary to clear a wreck from Tennessee highways, a principle that is even acknowledged by, and reflected in, the 2017 Revision of the THP Towing Manual.[6] In so doing, they pay each other, drive for each other, and cooperate with each other so as to be more effective in accomplishing the work they perform.

50.     On the 27th day of August 2018, at the continuation of the above-referenced hearing concerning said determination, Plaintiffs and counsel were given copies of THP's voluminous "documentary proof" as to the reasons both of the Plaintiffs Kilgore should be removed permanently from the THP Rotating Schedule Towing List in pursuance of the dictates of the revised January 2017 version of the THP Towing Manual.[7]

51.     Plaintiffs aver that the 2017 revision to the THP Towing Manual was not in use for most of the alleged violations complained of against both Plaintiffs. Plaintiffs aver that this 2017 revision of the THP Towing Manual allows the THP to go back and count multiple minor and moderate infractions that occurred three (3) years prior, and five (5) years for severe infractions. Further, it categorizes the types of infractions, a practice which was not employed in the previous versions of the THP Towing Manual.[8]

52.     The 2009 revision to the THP Towing Manual, which governed most of Plaintiffs' activities, does not categorize infractions and does not allow for counting infractions from prior years.[9]

_____

[6]*See* the 2017 Revision to the Tennessee Department of Safety & Homeland Security Towing Services Manual, at Section XII(G)-(H).
[7]A copy of the INVESTIGATION Report dated April 17, 2015, is attached hereto and incorporated by reference as Collective Exhibit 4.
[8]The 2017 Revision to the Tennessee Department of Safety & Homeland Security Towing Service Standards Manual is attached hereto as Exhibit 5.
[9]The 2009 Revision to the Tennessee Department of Safety & Homeland Security Towing Service Standards Manual is attached hereto as is attached hereto as Exhibit 6.

11

Plaintiffs aver that the "Final Determination" complained of herein is a retroactive application of the 2017 THP Towing Manual, amounting to an ex post facto application of law and subsequent regulation, in contravention of the Constitution of the United States.[10]

53.     Further, the alleged violations listed by Defendant Ruskey as occurring in 2016 and 2017 were never brought to the attention of either of Plaintiffs, nor did they receive warnings or suspensions as a result of these allegations.

54.     Plaintiffs aver that they seriously question the veracity of any of the 2016 and 2017 allegations as a result. Additionally, Plaintiffs aver that the 2017 revision to the THP Towing Manual should not have the regulatory effect intended as not being brought/introduced in compliance with the mandates of Tennessee's Uniform Administrative Procedures Act, as found at Tenn. Code. Ann. § 4-5-101, et seq.

55.     Neither Plaintiffs nor any of the other owners of trucking companies in the district in which Plaintiffs operate were given notice of a hearing or an opportunity to voice opinions or objections to the provisions of this revised THP Towing Manual.[11]

56.     Plaintiffs' counsel, after a continuance to review the purported evidence presented by Defendant Ruskey against Plaintiffs, told Defendant Mosely, who presided over the "hearing," that the evidence was "crap," proof of nothing, and no wrongdoing. Plaintiffs aver that at this hearing only THP proof/evidence was allowed to be presented, and Plaintiffs were not

---

[10]See U.S. Const. art. I, §§ 9, 10.
[11]Plaintiffs attach hereto and incorporate herein by reference communications between Attorney Mike McGowan and members of the Tennessee Towing Association addressing this very issue, as Exhibit 7.

allowed to defend their position, the very definition of "arbitrary and capricious." Plaintiffs have attached hereto, and incorporate herein by reference, affidavits with an accompanying list of responses to the alleged issues addressed at said "hearing." [12]

57.     Subsequently, both Plaintiffs received notice of their permanent removal from the THP Rotating Schedule Towing List via a document entitled "**Final Determination**," dated August 31, 2018, resulting in severe monetary damage to both Plaintiffs. Plaintiffs aver that the "hearing" was tantamount to a "kangaroo court" and/or a Star Chamber proceeding in which Plaintiffs were denied Due Process of law. [13]

58.     Plaintiffs' counsel lettered Defendant Hutcheson as a written appeal delineating the basic and obvious flaws in THP's case against Plaintiffs, as well as addressing the obvious motivation. A copy of this letter is attached hereto and incorporated herein by reference. [14] The appeal request was ultimately denied by Defendant Hutcheson by letter, dated October 23, 2018. [15]

## RETALIATION, OFFICIAL OPPRESSION, TORTIOUS INTERFERENCE WITH RIGHTS TO CONTRACT, AND FREEDOM OF ASSOCIATION

59.     Fred Messick and Cassie Kilgore each received telephone calls from the Defendant Ruskey on the 6th day of September 2018, in which Defendant Ruskey advised that the Plaintiffs Kilgore would not be allowed to drive for either of their companies. In his

---

[12] The Plaintiffs' sworn affidavits with accompanying list of alleged issues addressed are attached hereto and incorporated herein by reference, as Exhibit 8.

[13] Final Determination dated August 31, 2018, is attached hereto and incorporated by reference, as Exhibit 9.

[14] Plaintiffs letter to Field Operations Lieutenant Colonel James Hutcheson dated October 23, 2018 is attached hereto and incorporated by reference, as Exhibit 10.

[15] Hutcheson's letters upholding Mosely's determination is attached hereto and incorporated by reference, as Exhibit 11.

conversation with Fred Messick, Defendant Ruskey told Mr. Messick that Defendant Mosely instructed him to call and advise Mr. Messick accordingly. When asked to put this in writing, Defendant Ruskey refused to do so.

60.     On September 4, 2018, at a meeting with THP at the Cummings Highway Office, Bobby Ambrester, another independent owner of a wrecker company, who was subsequently suspended for ninety (90) days as a result of a fee dispute, was told by Defendant Mosely that the Plaintiffs Kilgore would no longer be able to drive for his company.[16]

61.     Plaintiffs aver that, given the shortage of qualified/certified drivers, all driver owners, including Plaintiffs, are or were on the required driver lists for other companies. This violates no regulatory rule and never presented itself as an issue prior to Plaintiffs' commencement of legal action.

62.     As a result, Fred Messick, Cassie Kilgore, and Bobby Ambrester became fearful of retaliation should they employ either of the Plaintiffs as drivers for their respective companies. But, nonetheless, soon thereafter both Mr. Messick's and Ms. Kilgore's independently owned and operated wrecker towing companies were permanently removed from the THP Rotating Schedule Towing List, thereby effectively eliminating the two (2) companies for whom Plaintiffs could at least have driven wreckers as employees so as to be able to continue to earn a living.

63.     Neither Fred Messick nor Cassie Kilgore were ever made aware of any infractions of the THP Towing Manual, and received no warnings whatsoever or suspensions prior to being permanently removed from the THP Rotating Schedule Towing List.

---

[16]Affidavits of Fred Messick, Cassie Kilgore, and Bobby Ambrester are attached hereto and incorporated by reference, as Exhibit 12.

14

64.     Plaintiffs aver that the ulterior motive for these removals, as well as the threat issued to Bobby Ambrester, was to eliminate any companies that might otherwise employ Plaintiffs as drivers to effectively starve Plaintiffs into total and complete submission, a further indication of retaliatory motivation.

65.     Plaintiffs aver that the timing of these final determinations, dated August 31, 2018, in close proximity to the dismissal of Plaintiffs' federal causes of action, June 18, 2018, and June 28, 2018, respectively, is obvious and conspicuous evidence of blatant retaliation for engaging THP employees in litigation.

66.     Subsequent to these events, Plaintiff Rodney Kilgore had owner requests for his services, only to learn that THP officers had informed the requesters they could not hire Mr. Rodney Kilgore's companies, and instead must allow another company with whom they were unfamiliar to work the job. For illustrative purposes, one (1) specific instance of such interference with Plaintiff Rodney Kilgore's right to contract occurred on September 14, 2018, in which an accident occurred on Monteagle Mountain, I-24 westbound at mile marker 131, involving a tractor trailer owned by S&S Trucking. Six (6) days later, Plaintiff Rodney Kilgore was contacted by the owner of S&S Trucking to recover and clean up the accident site. Plaintiff Rodney Kilgore accepted the job. A few days thereafter, the owner of S&S Trucking was contacted by the THP, and advised that Monteagle Wrecker was "not qualified" for the job, thus resulting in Plaintiff Rodney Kilgore's company losing said job, tantamount to tortious interference with business relations. This job represented several thousand dollars of lost income for Plaintiff Rodney Kilgore.[17] Owner requests do not fall under the control or authority of

---

[17]*See* Collective Exhibit 13

THP's/Tennessee Department of Safety and Homeland Security.

67.    Additionally, Plaintiff Rodney Kilgore, who is an authorized operative for the American Automotive Association (hereinafter "AAA"), has been made aware of an instance in which an elderly lady who pays for AAA services was denied Plaintiff Rodney Kilgore's AAA services by the THP, and, as a result, was forced to pay a company unassociated with AAA for the requisite tow, a fee which would otherwise have been covered under her AAA membership, at least in part.[18]

68.    Plaintiffs aver that as a direct and proximate result of their interactions with THP, a stigma has been imputed to them, resulting in reputational damage, causing their removal from the towing rotation lists of neighboring States and jurisdictions.

69.    Plaintiffs aver that the foregoing historical facts clearly illustrate an unprecedented exercise of arbitrary and unchecked power for the purpose of financial ruination of Plaintiffs, purely motivated by retaliation.

## V.  CAUSES OF ACTION

### COUNT I
**Violation of Plaintiffs' Right to Freedom of Speech Guaranteed by the First and Fourteenth Amendment to the Constitution of the United States of America**

70.    Paragraphs 1 through 69 are incorporated herein by reference as if rewritten verbatim.

71.    Plaintiffs Rodney Kilgore and William Kilgore contend that the facts supporting the final determinations issued by Defendant Mosely at the insistence of Defendant Ruskey

---

[18]*See* Collective Exhibit 13

16

involving Plaintiff Rodney Kilgore, and or d/b/a Monteagle Wrecker Service, as well as Plaintiff William Kilgore, and/or d/b/a Sonny's Wrecker Service, were false, pretextual, duplicative, and retaliation in direct response for prior statements made by both Plaintiffs on matters of public concern regarding the acts of sexual harassment and other acts and/or omissions of THP employees concerning the unlawful administration of the State's THP Rotating Schedule Towing List, as well as the two (2) lawsuits previously filed and referenced herein concerning the same by both Plaintiffs and the multiple administrative grievances filed with and argued before the Tennessee Department of Safety over the last several years.

72. Plaintiffs respectfully submit that the subsequently issued letter of final determination was (1) direct retaliation for multiple public statements of public concern made by both Plaintiffs Rodney Kilgore and Plaintiff William Kilgore concerning THP operatives, and (2) retaliation for filing the two (2) prior lawsuits and several associated administrative grievances lodged concerning Monteagle Wrecker Service and Sonny's Wrecker Service, and their respective vested property interests in remaining on the THP Rotating Schedule Towing List.

73. Accordingly, Plaintiffs Rodney Kilgore and William Kilgore aver that Defendants, and others otherwise unnamed herein, violated their First and Fourteenth Amendment Rights guaranteed by the Constitution of the United States to speak on matters of public concern, and acted intentionally and maliciously in retaliation for Plaintiffs' prior lawsuits and administrative actions by harassing both Plaintiffs in an intentional and malicious manner, with the ultimate goal of permanently removing them from the THP Rotating Schedule Towing List.

74. As a direct and proximate result of the actions complained of herein, Plaintiffs sustained financial ruination, reputational harm, emotional distress, humiliation, mental anguish,

17

and loss of enjoyment of life.

## COUNT II
### Violation of Plaintiffs' Right to Freedom of Speech Guaranteed by Article I, Section 19 of the Constitution of the State of Tennessee

75.     Paragraphs 1 through 69 are incorporated herein by reference as if rewritten verbatim.

76.     Article I, Section 19 of the Constitution of the State of Tennessee holds, in pertinent part, "[t]hat the free communication of thoughts and opinions, is one of the invaluable rights of man and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty."

77.     Plaintiffs aver the subsequent heightened level of scrutiny and oversight was in retaliation for engaging certain defendants named herein, and others unnamed, in litigation and for speaking on matters of public concern.

78.     Plaintiffs aver that once named as a defendant, Defendant Ruskey pursued a campaign of retribution, attempting to eradicate Plaintiffs and associates from the segment of the Free Market controlled and governed by the THP.

79.     Plaintiffs aver that aforementioned campaign to eradicate Plaintiffs as Market participants included Defendants coordinating with competing businesses, promising them Plaintiffs Market share should said competing business assist Defendants with their stated goal.

80.     Plaintiffs contend that such conduct in response to Plaintiffs speaking on matters of public concern is in direct contravention of Article I, Section 19 of the Constitution of the State of Tennessee.

81.     As a direct and proximate result of the actions complained of herein, Plaintiffs sustained financial ruination, reputational harm, emotional distress, humiliation, mental anguish,

18

and loss of enjoyment of life.

## COUNT III

**Violation of Plaintiffs' Procedural Due Process Rights Guaranteed by the Fourteenth Amendment to the Constitution of the United States of America**

82.     Paragraphs 1 through 69 are incorporated herein by reference as if rewritten verbatim.

83.     The Fourteenth Amendment to the United States Constitution guarantees that no State may deny any person of life, liberty, or property without due process of law.

84.     If a person is to be deprived of life, liberty, or property by the State, they must be given a *meaningful* hearing and notice of that hearing.

85.     Plaintiffs have a vested property interest in remaining on the THP Rotating Schedule Towing List.

86.     Defendant Mosley, who is part of the THP command structure, and Defendant Ruskey's superior, presided over the hearing at which the determination was discussed, acting as trier of fact.

87.     Defendant Ruskey, who conducted an intensive investigation of Plaintiffs, acted in a prosecutorial role, serving as the "representative" for the THP, and presented evidence against Plaintiffs that he himself compiled.

88.     At said hearing, Plaintiffs were not afforded an opportunity to cross-examine witnesses or object to the evidence presented against them.

89.     Plaintiffs respectfully submit that such a hearing is patently flawed, devoid of any impartiality, amounting to an illusory trial, and therefore lacking any meaningful procedural safeguards.

90.     Additionally, Plaintiffs respectfully submit that the decision to remove their

19

companies was a foregone conclusion, and therefore any appearance of any procedural safeguard is merely a spectre of such. In support of this, Plaintiffs would direct this Honorable Court's attention to the title of the very document that was the subject of said hearing, i.e., "Determination."

91.     Plaintiffs aver that the Defendants have infringed upon their right to procedural due process by virtue of the manner in which Plaintiffs were removed from the THP Rotating Schedule Towing List, and the mechanisms by which the same was accomplished.

92.     As a direct and proximate result of the actions complained of herein, Plaintiffs sustained financial ruination, reputational harm, emotional distress, humiliation, mental anguish, and loss of enjoyment of life.

**COUNT IV**
**Violation of Procedural Due Process Rights Pursuant to Article I, Section 8 of the Constitution of the State of Tennessee**

93.     Paragraphs 1 through 69 are incorporated herein by reference as if rewritten verbatim.

94.     Article I, Section 8 of the Constitution of the State of Tennessee guarantees "[t]hat no man shall be … disseized of his freehold, liberties or privileges, or … in any manner destroyed or deprived of his life, liberty, or property but by the judgment of his peers, or the law of the land."

95.     The touchstone of procedural due process is the fundamental requirement that an individual be given the opportunity to be heard in a meaningful manner.

96.     Pursuant to Article I, Section 8 of the Constitution of the State of Tennessee, Plaintiffs have a guaranteed right to maintain their respective vested property interests.

20

97. Defendants deprived Plaintiffs of their respective vested property interests by virtue of their removal of Plaintiffs from the THP Rotating Schedule Towing List without a *meaningful* hearing.

98. The removal of Plaintiffs from the THP Rotating Schedule Towing List subsequent to the alleged hearing was arbitrary, capricious, without rational basis, and has no substantial relationship to the public health, safety, morals, or general welfare.

99. Defendant Mosley, who is part of the THP command structure, and Defendant Ruskey's superior, presided over the hearing at which the determination was discussed, acting as trier of fact.

100. Defendant Ruskey, who conducted an intensive investigation of Plaintiffs, acted in a prosecutorial role, serving as the "representative" for the THP, and presented evidence that he himself compiled.

101. At said hearing, Plaintiffs were not afforded an opportunity to cross-examine witnesses or object to the evidence presented against them.

102. Plaintiffs respectfully submit that such a hearing is patently flawed, devoid of any impartiality, amounting to an illusory trial, and therefore lacking any meaningful procedural safeguards.

103. Additionally, Plaintiffs respectfully submit that the decision to remove their companies was a foregone conclusion, and therefore any appearance of any procedural safeguard is merely a spectre of such. In support of this, Plaintiffs would direct this Honorable Court's attention to the title at the very document that was the subject of said hearing, i.e., "Determination."

104. Plaintiffs aver that the Defendants have infringed upon their right to procedural

due process by virtue of the manner in which Plaintiffs were removed from the THP Rotating Schedule Towing List, and the mechanisms by which the same was accomplished.

105. As a direct and proximate result of the actions complained of herein, Plaintiffs sustained financial ruination, reputational harm, emotional distress, humiliation, mental anguish, and loss of enjoyment of life.

## COUNT V
### Violation of Plaintiffs' Substantive Due Process Rights Guaranteed by the Fourteenth Amendment to the Constitution of the United States of America

106. Paragraphs 1 through 69 are incorporated herein by reference as if rewritten verbatim.

107. The Fourteenth Amendment to the United States Constitution guarantees that no State may deny any person of life, liberty, or property without due process of law.

108. Plaintiffs have a vested property interest in remaining on the THP Rotating Schedule Towing List.

109. Plaintiffs aver Defendants have selectively enforced the provisions of the THP Towing Manual.

110. Specifically, Plaintiffs aver Defendants have allowed other towing companies under their supervision an opportunity to correct infractions of which said companies were actually guilty, whereas the mere allegations of such served as the basis for Plaintiffs' permanent removal from the THP Rotating Schedule Towing List.

111. Plaintiffs aver the actions of Defendants, specifically, the disparate treatment of Plaintiffs in relation to other similarly situated towing companies, amounts to an unlawful and discriminatory application of the law and applicable regulation.

112. Plaintiffs aver that such uneven and inconsistent application and enforcement of

22

the policy and procedures outlined in the THP Towing Manual is tantamount to a violation of Plaintiffs substantive due process rights, in contravention of the Fourteenth Amendment to the Constitution of the United States of America.

113.    As a direct and proximate result of the actions complained of herein, Plaintiffs sustained financial ruination, reputational harm, emotional distress, humiliation, mental anguish, and loss of enjoyment of life.

## COUNT VI
### Violation of Plaintiffs' Right to Substantive Due Process Guaranteed by Article I, Section 8 of the Constitution of the State of Tennessee

114.    Paragraphs 1 through 69 are incorporated herein by reference as if rewritten verbatim.

115.    Article I, Section 8 of the Constitution of the State of Tennessee guarantees "[t]hat no man shall be ... disseized of his freehold, liberties or privileges, or ... in any manner destroyed or deprived of his life, liberty, or property but by the judgment of his peers, or the law of the land."

116.    Plaintiffs have a vested property interest in remaining on the THP Rotating Schedule Towing List.

117.    Plaintiffs aver Defendants have selectively enforced the provisions of the THP Towing Manual.

118.    Specifically, Plaintiffs aver Defendants have allowed other towing companies under their supervision an opportunity to correct infractions of which said companies were actually guilty, whereas the mere allegations of the very same infractions served as the basis for Plaintiffs' permanent removal from the THP Rotating Schedule Towing List.

119.    Plaintiffs aver the actions of Defendants, specifically, the disparate treatment of

23

Plaintiffs in relation to other similarly situated towing companies, amounts to an unlawful and discriminatory application of the law and applicable regulation.

120. Plaintiffs aver that such uneven and inconsistent application and enforcement of the policy and procedures outlined in the THP Towing Manual is tantamount to a violation of Plaintiffs substantive due process rights, in contravention of the Article I, § 8 of the Constitution of the State of Tennessee.

121. As a direct and proximate result of the actions complained of herein, Plaintiffs sustained financial ruination, reputational harm, emotional distress, humiliation, mental anguish, and loss of enjoyment of life.

### COUNT VII
### Violation of Plaintiffs' Right to Equal Protection Guaranteed by the Fourteenth Amendment to the Constitution of the United States of America

122. Paragraphs 1 through 69 are incorporated herein by reference as if rewritten verbatim.

123. The Fourteenth Amendment to the United States Constitution guarantees the right to equal protection under the law.

124. 42 U.S.C. § 1983 provides a cause of action for violation of the right to equal protection under the Fourteenth Amendment to the United States Constitution.

125. Defendants acted under the color of state law in depriving Plaintiffs of their constitutionally guaranteed right to equal protection under the Fourteenth Amendment of the United States Constitution.

126. As a result of the regulatory scheme outlined in the THP Towing Manual, the periodic inspections, and the substantial monetary expenditures required to remain in compliance therewith, Plaintiffs have a vested property interest in remaining on the THP Rotating Schedule

24

Towing List.

127. Upon information and belief, Plaintiffs aver there to have been instances of multiple, discrete, and separate towing companies presently on the THP Rotating Schedule Towing List owned by a single individual, which is strictly prohibited by the THP Towing Manual.[19]

128. Upon information and belief, Plaintiffs aver the matter of these multiple, discrete, and separate towing companies being owned by a single individual was brought to the attention of said individual.

129. Upon information and belief, Plaintiffs aver said individual was given an opportunity to consolidate aforementioned multiple, discrete, and separate towing companies, and subsequently allowed to remain on the THP Rotating Schedule Towing List.

130. Plaintiffs aver that, unlike the aforementioned owner of said multiple, discrete, and separate towing companies who was allowed to remain on the THP Rotating Schedule Towing List, the mere allegation of such served as the basis for Plaintiffs removal from the THP Rotating Schedule Towing List.

131. Defendants intentionally discriminated against Plaintiffs when they unlawfully removed Plaintiffs from the THP Rotating Schedule Towing List for the mere allegation of Plaintiffs individual businesses being comingled, by virtue of the inconsistent and selective application and enforcement of the provisions of the THP Towing Manual in allowing other similarly situated parties to remain on the THP Rotating Schedule Towing List.

---

[19] *See* the 2017 Revision to the Tennessee Department of Safety & Homeland Security Towing Services Manual, at Section V(B)(2)(f).

25

132.     No rational basis exists for the discriminatory treatment of Plaintiffs, and accordingly Defendants' conduct as alleged herein is a denial of equal protection of the laws afforded to Plaintiffs in violation of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States of America.

133.     As a direct and proximate result of the actions complained of herein, Plaintiffs sustained financial ruination, reputational harm, emotional distress, humiliation, mental anguish, and loss of enjoyment of life.

## COUNT VIII
### Violation of Plaintiffs' Right to Equal Protection Guaranteed by Article XI, Section 8 of the Constitution of the State of Tennessee

134.     Paragraphs 1 through 69 are incorporated herein by reference as if rewritten verbatim.

135.     Article XI, Section 8 of the Constitution of the State of Tennessee provides that the government may not "pass any law granting to any individual or individuals, rights, privileges, immunitie[s], or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law."

136.     Under this provision, Plaintiffs are entitled to equal protection under the law

137.     As a result of the regulatory scheme outlined in the THP Towing Manual, the periodic inspections, and the substantial monetary expenditures required to remain in compliance therewith, Plaintiffs have a vested property interest in remaining on the THP Rotating Schedule Towing List.

138.     Upon information and belief, Plaintiffs aver there to have been instances of multiple, discrete, and separate towing companies presently on the THP Rotating Schedule

26

Towing List owned by a single individual, which is strictly prohibited by the THP Towing Manual.[20]

139.    Upon information and belief, Plaintiffs aver the matter of these multiple, discrete, and separate towing companies being owned by a single individual was brought to the attention of said individual.

140.    Upon information and belief, Plaintiffs aver said individual was given an opportunity to consolidate aforementioned multiple, discrete, and separate towing companies, and subsequently allowed to remain on the THP Rotating Schedule Towing List

141.    Plaintiffs aver that, unlike the aforementioned owner of said multiple, discrete, and separate towing companies who was allowed to remain on the THP Rotating Schedule Towing List, the mere allegation of such served as the basis for Plaintiffs removal from the THP Rotating Schedule Towing List.

142.    Defendants intentionally discriminated against Plaintiffs when they unlawfully removed Plaintiffs from the THP Rotating Schedule Towing List for the mere allegation of Plaintiffs individual businesses being comingled, by virtue of the inconsistent and selective application and enforcement of the provisions of the THP Towing Manual in allowing other similarly situated parties to remain on the THP Rotating Schedule Towing List.

143.    No rational basis exists for the discriminatory treatment of Plaintiffs, and accordingly Defendants' conduct as alleged herein is a denial of equal protection of the laws afforded to Plaintiffs in violation of Article XI, Section 8 of the Constitution of the State of Tennessee.

---

[20]*See* the 2017 Revision to the Tennessee Department of Safety & Homeland Security Towing Services Manual, at Section V(B)(2)(f).

144. As a direct and proximate result of the actions complained of herein, Plaintiffs sustained financial ruination, reputational harm, emotional distress, humiliation, mental anguish, and loss of enjoyment of life.

## COUNT IX
### Conspiracy to Violate Constitutionally Protected Rights
### in Contravention of 42 U.S.C. § 1985

145. Paragraphs 1 through 69 are incorporated herein by reference as if rewritten verbatim.

146. Upon information and belief, Plaintiffs aver Defendants coordinated with third-parties, including other specific towing companies operating within the same district as Plaintiffs and under the supervision of Defendants, and, with the stated goal of removing Plaintiffs from the THP Rotational Towing List, selectively enforced the provisions of the THP Towing Manual.

147. This course of action on the part of Defendants and said third-parties (1) effectively eliminated Plaintiffs as Market competitors, and (2) extinguished Plaintiffs as the perceived existential threat to Defendants.

148. Plaintiffs aver the aforementioned course of action on the part of Defendants and said third-parties amounts to a violation of Plaintiffs' constitutionally guaranteed rights, and a conspiracy to subvert the same.

149. As a direct and proximate result of the actions complained of herein, Plaintiffs sustained financial ruination, reputational harm, emotional distress, humiliation, mental anguish, and loss of enjoyment of life.

## COUNT X
### Tortious Interference with Contractual and Business Relations, and
### Implementation of Retrospective Laws, in Violation of Article I, Section 20
### of the Constitution of the State of Tennessee

28

150.    Paragraphs 1 through 69 are incorporated herein by reference as if rewritten verbatim.

151.    Article I, Section 20 of the Constitution of the State of Tennessee establishes, "[t]hat no retrospective law, or law impairing the obligations of contracts, shall be made."

152.    Plaintiffs aver the revisions contained in the 2017 THP Towing Manual, and the ex post facto application of the same, amounts to a retrospective law, within the meaning of Article I, Section 20 of the Constitution of the State of Tennessee.

153.    Additionally, Plaintiffs aver that the actions of Defendants Ruskey and Mosely, in attempting to prevent their employment by other wrecker companies by contacting and/or conveying directly to the owners of these other wrecker companies, and advising them in such a manner that could only have been interpreted as a threat of future repercussions should they not abide by said edict, that neither of the Plaintiffs Kilgore could drive or work for any of their companies, amounts to tortious interference with contractual and business relations, proscribed by Tenn. Code. Ann. § 47-50-109, Article I, Section 20 of the Constitution of the State of Tennessee, and the common law of the State of Tennessee.

154.    The actions of Defendants also resulted in the removal of Plaintiffs from analogous towing rotational lists in neighboring States and jurisdictions, thereby eradicating the few remaining avenues of income then-available to Plaintiffs.

155.    Moreover, Plaintiffs aver the actions of Defendants resulted in the tortious interference with the contractual and business relationship between Plaintiffs and the State of Tennessee and the Department of Safety and Homeland Security, effectively prohibiting Plaintiffs from participation in the substantial portion of the Market controlled and regulated by the Tennessee Department of Safety and Homeland Security, resulting in undue economic

29

hardship and reputational harm.

156. These intentional and malicious acts of interference with contractual and business relations were engaged in as a result of, and in retaliation for, the multiple statements and complaints made by Plaintiffs concerning the sexual harassment complained of in one of Plaintiff's prior lawsuits, as well as the multiple statements made by both Plaintiffs concerning their respective unconstitutional prior removals from the THP Rotating Schedule Towing List, which were expressed on multiple occasions, both verbally and in grievances and lawsuits.

157. As a direct and proximate result of the actions complained of herein, Plaintiffs sustained financial ruination, reputational harm, emotional distress, humiliation, mental anguish, and loss of enjoyment of life.

158. Accordingly, Plaintiffs herein seek civil monetary damages as against the named Defendants jointly and severally for engaging in said interference with contractual and business relations.

## COUNT XI
### Violation of Plaintiffs' Right to Freedom of Association Guaranteed by the First Amendment of the Constitution of the United States of America

159. Paragraphs 1 through 69 are incorporated herein by reference as if rewritten verbatim.

160. Plaintiffs aver that the Defendants have intentionally and maliciously infringed upon their respective Freedoms of Association, in violation of their constitutional rights by virtue of the Defendants interference with contractual and business relations as complained of herein.

161. As a direct and proximate result of the actions complained of herein, Plaintiffs sustained financial ruination, reputational harm, emotional distress, humiliation, mental anguish, and loss of enjoyment of life.

30

**The Joint and Several Liability of Defendant Hutcheson**

162.    Paragraphs 1 through 69 are incorporated herein by reference as if rewritten verbatim.

163.    Plaintiffs aver that Defendant Hutcheson is liable for the intentional and malicious acts of Defendants Ruskey and Mosely, by virtue of his acquiescence and/or condonation of their unlawful acts as delineated herein, in addition to Defendant Hutcheson's supervisory and authoritative role in relation to Defendants Ruskey and Mosely, and should therefore be held jointly and severally liable along with them.

164.    As a direct and proximate result of the actions complained of herein, Plaintiffs sustained financial ruination, reputational harm, emotional distress, humiliation, mental anguish, and loss of enjoyment of life.

### COUNT XIII
**Attorney's Fees**

165.    Paragraphs 1 through 69 are incorporated herein by reference as if rewritten verbatim.

166.    Plaintiffs are entitled to their attorneys' fees pursuant to 28 U.S.C. § 1988 as a result of the actions alleged herein.

### VI.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Rodney Kilgore, as sole proprietor of Monteagle Wrecker Service at each of its three (3) current locations, and William Kilgore, as sole proprietor of Sonny's Wrecker Service, demand judgment against Defendant Daniel Ruskey, in his individual capacity as Lieutenant with the Tennessee Department of Safety, Defendant Jeff Mosley, in his individual capacity as Captain with the Tennessee Department of Safety, and Defendant James Hutcheson,

in his individual capacity as a Field Operations Lieutenant Colonel with the Tennessee Department of Safety, all jointly and severally, for five million dollars ($5,000,000.00) in compensatory damages, and ten million dollars ($10,000,000.00) in punitive damages, for the intentional and malicious violation of their First and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, conspiracy to violate said rights, in contravention of 42 U.S.C. § 1985, violations of Plaintiffs right to freedom of contract, tortious interference with business relations, as well as for violation of State law in engaging in intentional and malicious official oppression, violations of Plaintiffs' right to equal protection, both State and Federal, violations of Due Process protections, both State and federal, and for attorney's fees and costs pursuant to 42 U.S.C. § 1988, and further demand a jury to try this cause.

Respectfully submitted,

/s:/ Russell Leonard
Russell L Leonard, BPR #01491
*Attorney for Plaintiffs*
119 2nd Avenue, S.W.
Winchester, Tennessee 37398
(931) 962-0447

/s:/ Arthur F. Knight, III
Arthur F. Knight, III, BPR #016178
*Attorney for Plaintiffs*
Taylor and Knight, G.P.
Post Office Box 1710
Knoxville, Tennessee 37901-1710
(865) 522-5057

/s:/ J. Taylor Thomas
J. Taylor Thomas, BPR #036278
*Attorney for Plaintiffs*
The Ziebold Law Firm
809 Market St. Second Floor
Chattanooga, Tennessee 37406
(423) 803-4333

## VERIFICATION

STATE OF TENNESSEE          )
COUNTY OF *Marion*          )


I, Rodney Kilgore, after first being duly sworn according to law makes oath that I have read the foregoing Verified Complaint and that the facts set forth therein are true to the best of my knowledge, information and belief.

RODNEY KILGORE, Plaintiff

Sworn to and subscribed before me

This 17th day of June , 2019.


Notary Public

My commission expires: 2/28/22

33

## <u>VERIFICATION</u>

**STATE OF TENNESSEE** )

**COUNTY OF** _Marion_ )

    I, William Kilgore, after first being duly sworn according to law makes oath that I have read the foregoing Verified Complaint and that the facts set forth therein are true to the best of my knowledge, information and belief.

_William Kilgore_

WILLIAM KILGORE, Plaintiff

Sworn to and subscribed before me

This 17th day of _June_ , 2019.

_Laura Ann Sims_

Notary Public

My commission expires: _2/28/22_

34